1   KARIN G. PAGNANELLI (SBN 174763)
        kgp@msk.com
2   MARC E. MAYER (SBN 190969)
        mem@msk.com
3   DANIEL A. KOHLER (SBN 285501)
        dxk@msk.com
4   MITCHELL SILBERBERG & KNUPP LLP
    1377 West Olympic Boulevard
5   Los Angeles, California 90064-1683
    Telephone:   (310) 312-2000
6   Facsimile:   (310) 312-3100

7   Attorneys for Plaintiff
    Blizzard Entertainment, Inc.

8

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12  Blizzard Entertainment, Inc.,          CASE NO. 8:15-cv-1840

13              Plaintiff,                  **COMPLAINT FOR:**

14         v.                              **(1) COPYRIGHT INFRINGEMENT**

15  James Enright a/k/a "Apoc," and Does 1  **(2) INTENTIONAL
    through 10, inclusive,                  INTERFERENCE WITH
16                                          CONTRACTUAL RELATIONS**

            Defendants.

17                                          **(3) BREACH OF CONTRACT**

18                                          **DEMAND FOR JURY TRIAL**

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

7082442.13

                              **COMPLAINT**

Blizzard Entertainment, Inc. ("Blizzard") avers as follows:

## PRELIMINARY STATEMENT

1.      Blizzard is a developer and publisher of high-quality computer games and related entertainment products.  Among the computer game products published by Blizzard are the massively popular online computer games "World of Warcraft" ("WoW"), "Diablo 3" ("D3") and "Heroes of the Storm" ("HOTS") (collectively, the "Blizzard Games").  By this action, Blizzard seeks to put a stop to, and obtain redress for, the willful and deliberate conduct of Defendant James Enright ("Enright") and those working in concert with him.  Enright is an individual who, in collaboration with an international team of developers and distributors, has been instrumental in creating, programming, marketing, distributing, maintaining, and updating, for profit, a portfolio of malicious software products that are designed to harm Blizzard and its games.  More precisely, Enright's software products, known as "HonorBuddy," "DemonBuddy" and "StormBuddy," (the "Bots") are video game "bots" that allow users to automate gameplay and thereby manipulate the Blizzard Games to their competitive advantage.

2.      The Bots created by Enright and his team have caused, and are continuing to cause, massive harm to Blizzard.  Blizzard's business depends upon its games being enjoyable and balanced for players of all skill levels, and Blizzard expends a massive amount of time and money to ensure that this is the case.  The Bots that Enright has programmed and helps distribute destroy the integrity of the Blizzard Games, alienating and frustrating legitimate players, and diverting revenue from Blizzard to Defendants.  As a result of Enright's conduct, Blizzard has lost millions or tens of millions of dollars in revenue and in consumer goodwill.  Meanwhile, Enright and his team have been massively and unjustly

1    enriched at Blizzard's expense, having received hundreds of thousands (if not

2    millions) of dollars in profits from the sale of the Bots.

3           3.     In creating and distributing the Bots, Enright has engaged in

4    numerous acts of copyright infringement.  He also has knowingly and intentionally

5    violated the limited license he entered into with Blizzard pursuant to which he

6    obtained access to the Blizzard Games, and he has encouraged and induced others

7    to do the same.  Enright knows that his conduct is unlawful and is causing ongoing

8    harm to Blizzard.  For that reason, he has carefully sought to conceal his identity,

9    operating only through his alias "Apoc."  He also has cautioned users of the Bots

10   that Blizzard is "scanning" for his software and thus he will continually modify the

11   Bots to avoid detection by Blizzard.

12          4.     Enright has no credible defense to his unlawful conduct.  Blizzard is

13   entitled to monetary damages, injunctive and other equitable relief, and punitive

14   damages against Enright and those working in concert with him.

15

16                          **JURISDICTION AND VENUE**

17          5.     This is a civil action seeking damages and injunctive relief under the

18   Copyright Act, 17 U.S.C. § 101 *et seq.*, and under the laws of the State of

19   California.

20          6.     This Court has subject matter jurisdiction over Blizzard's claims for

21   copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Pursuant to 28

22   U.S.C. § 1367, this Court has supplemental jurisdiction over Blizzard's state law

23   claims for breach of contract and intentional interference with contract in that they

24   are so related to Blizzard's claims under the Copyright Act as to be part of the

25   same case or controversy.

26          7.     This Court has personal jurisdiction over Defendants, including

27   because Defendants have engaged in, contributed to, and induced the infringing

28

1  conduct at issue within the United States and the State of California and among

2  other things, have purposefully directed their activities at the United States and at

3  California.  Blizzard additionally avers that, among other things, (a) each of the

4  Defendants or their respective agents are doing or have been doing business

5  continuously in the State of California and this District, (b) a substantial part of the

6  wrongful acts committed by Defendants, and each of them, have occurred in

7  interstate commerce, in the State of California, and in the Central District of

8  California, (c) Defendants know that the damages and other harmful effects of

9  Defendants' infringing activities occur in the United States and primarily in

10  California, where Blizzard has its principal place of business, and (d) Defendants'

11  infringing activities are part of a joint, international effort among defendants

12  residing within the United States and outside the United States.

13       8.       Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and

14  1400 because this is a judicial District in which a substantial part of the events

15  giving rise to the claims occurred, and/or in which Blizzard's injury was suffered.

16

17                           **THE PARTIES**

18       9.       Blizzard is a corporation duly organized and existing under the laws

19  of the State of Delaware, with its principal place of business in Irvine, California.

20  Blizzard is the publisher and owner of all rights, title, and interest in the immensely

21  popular computer games "World of Warcraft" (and its numerous expansion packs),

22  "Diablo 3," and "Heroes of the Storm" (among others).

23       10.      Blizzard is informed and believes, and on that basis alleges, that

24  Defendant James Enright is an individual residing at 15 Blue Ridge Rd, Voorhees,

25  NJ 08043.  Blizzard is informed and believes that Enright is one of the primary

26  developers of the Bots and has been instrumental in creating and maintaining the

27

28

Mitchell
Silberberg &
Knupp LLP

7082442.13

**COMPLAINT**

Bots and communicating with users of the Bots, including to provide technical support for the Bots.

11.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 1-10 inclusive, are unknown to Blizzard, which has therefore sued said defendants by such fictitious names.  The defendants may include individuals whose real identities are not yet known to Blizzard, but who are acting in concert with one another, often in the guise of Internet aliases, in committing the unlawful acts alleged herein.  Blizzard will seek leave to amend this complaint to state their true names and capacities once said defendants' identities and capacities are ascertained.  Blizzard is informed and believes, and on that basis avers, that all defendants sued herein are liable to Blizzard as a result of their participation in all or some of the acts set forth in this complaint (all of the aforementioned defendants collectively are referred to herein as "Defendants").

12.     Blizzard is informed and believes, and on that basis alleges, that at all times mentioned in this complaint, each of the Defendants was the agent of each of the other Defendants and, in doing the things averred in this complaint, was acting within the course and scope of such agency.

## FACTS APPLICABLE TO ALL CLAIMS
### Blizzard's Computer Games

13.     Blizzard is a computer game developer and publisher, engaged in the business of developing, financing, producing, marketing, and distributing high-quality software game products.  Among the software products produced and distributed by Blizzard are some of the most popular computer games in the world, including the incredibly popular online games game "World of Warcraft" and its numerous expansion packs (collectively, "WoW"), "Diablo 3" and its expansion

1  pack ("D3"), and "Heroes of the Storm" ("HOTS") (collectively, the "Blizzard

2  Games").  Since establishing the Blizzard label in 1994, Blizzard has become one

3  of the world's most respected and popular makers of computer games.

4       14.    While the Blizzard Games vary significantly in many respects, they

5  share a significant common feature in that the success of each rests in part on

6  Blizzard's ability to retain their users' interest so that users play the Blizzard

7  Games for a sustained period of time.

8

9                          **World of Warcraft**

10      15.    WoW was released in 2004, and is one of the most ambitious and

11  critically acclaimed online computer games ever created.  WoW is a Massively

12  Multiplayer Online Roleplaying Game ("MMORPG"), a genre of computer game

13  in which a large number of players interact with each other simultaneously in a

14  persistent "virtual" online world.

15      16.    In WoW, players from around the world assume the roles of different

16  characters in a sprawling, ever-changing virtual world, populated by a variety of

17  human and computer- controlled characters.  As they explore, adventure, and quest

18  across WoW's vast online world, players advance, upgrade, and customize their

19  characters.  Developing (or "leveling") characters in WoW and obtaining access to

20  the most valuable in-game items requires a significant investment of time and

21  effort playing the game.  Many players dedicate hundreds or thousands of hours in

22  leveling their character.  For WoW players, advancing in the game is a source of

23  pride and accomplishment, and is one of the primary reasons why players continue

24  to play WoW on an ongoing basis.

25      17.    In order to recoup its massive investment in WoW, Blizzard charges

26  users a monthly (or yearly) subscription fee.  Payment of the subscription fee

27  permits users to access Blizzard's WoW servers and play in the WoW gaming

28

environment.  It is critical to Blizzard's business model that players remain engaged in the WoW game world, most importantly by continuing to aspire to reach higher character levels, acquire better and more powerful items, and accomplish certain feats within the game.  Accordingly, Blizzard takes great pains to ensure that the WoW game world is properly balanced and offers fair, interesting, and compelling challenges.  Blizzard updates WoW on an ongoing basis to fix bugs, offer new content, ensure that the game is balanced, and prevent unscrupulous players from hacking the WoW servers and cheating other players, including by using external software programs and "bots" to manipulate the game world and obtain an unfair advantage over other players.

## **Diablo 3**

18.     D3 is an online "action roleplaying game" in which players (either on their own or cooperatively in groups of up to four) battle monsters, demons, and other enemies in real time, building their characters by obtaining experience and in-game items.

19.     To keep D3 gameplay fresh and engaging (and thereby retain the attention of D3 players), D3 includes various challenge and adventure modes, each scalable in various levels of difficulty, with correspondingly greater in-game rewards.  Additionally, Blizzard consistently develops and releases new in-game content for D3 (including, to date, one expansion pack and numerous content "patches").  In addition to the substantial capital and resources expended by Blizzard in developing D3 and its expansion, Blizzard expends substantial resources on an ongoing basis developing and releasing these content patches, and maintaining the D3 game (including server maintenance, bug fixes, etc.).  Accordingly, Blizzard's expenditure of money and resources in connection with D3 is massive and ongoing.

20.     In order to recoup its massive investment in D3 and to defray the cost of maintaining and upgrading D3 servers, Blizzard relies on the sale of the D3 client software and expansions to the game.  Accordingly, it is paramount to Blizzard's business model that D3 retain the interest of its user base for a sustained period of time, so that D3 users will remain interested in the game, recommend the game to friends and family, and continue to purchase D3 expansions.

## Heroes of the Storm

21.     On or around June 2, 2015, Blizzard released "Heroes of the Storm" ("HOTS").  HOTS is a highly competitive, skill-based multiplayer game in which two teams of five players engage one another in competitive head-to-head combat.

22.     HOTS utilizes a "free to play" or "freemium" business model.  Under this business model, players are not charged to initially download the HOTS client software or play the game online.  Instead, Blizzard relies on in-game purchases (sometimes referred to as "microtransactions").  Only dedicated HOTS players typically make these in-game purchases, and thus it is critical to Blizzard's business that players remain invested in the game and interested in purchasing in-game items and upgrades.

23.     In addition, many of the in-game items available for purchase using real money can also be purchased by players using "gold" (*i.e.* in-game currency which the player accumulates through playing HOTS and completing various tasks).  Blizzard has carefully formulated the rate at which this currency should be able to be acquired by HOTS players.  Programs, such as the Bots, are extremely disruptive to the HOTS economy, including because they allow users to acquire "gold" at an unnaturally accelerated rate.

24.     To ensure that users stay engaged and continue to play HOTS, Blizzard expends significant time and resources ensuring that gameplay remains

1   fair and balanced, and thus enjoyable to the HOTS user base.  Among Blizzard's

2   efforts to ensure that HOTS remains fair and balanced are regular content patches,

3   "re-balancing" of certain HOTS hero characters (e.g., to fix a perceived imbalance

4   in hero power), and the continuous development and implementation of new

5   content (e.g., new heroes or "maps" in which players compete against one

6   another).

7

8                    **Blizzard's End User License Agreement**

9            25.    In order to access, download, or play the Blizzard Games, or any

10  patches or expansions to the Blizzard Games, users must expressly manifest their

11  assent to the "Battle.net End User License Agreement" (the "EULA").  The entire

12  text of the EULA is displayed to users at the time they are asked to assent to its

13  terms.  The EULA also is perpetually made available at http://us.blizzard.com/en-

14  us/company/legal/eula.html).  Blizzard also gives players the option to decline to

15  enter into the EULA and, if desired, to obtain a refund of the purchase price if they

16  are unwilling to consent to the EULA.

17           26.    The EULA is a conditional, limited license agreement between

18  Blizzard and its users.  Under the EULA, Blizzard agrees to conditionally license

19  to its users the right to download, copy, install, and play the Blizzard Games,

20  subject to certain terms, restrictions, and conditions.  Among other provisions, the

21  EULA expressly conditions the users' access to the Blizzard Games on the users'

22  promise to not "[c]reate, use, offer, advertise, make available and/or distribute the

23  following or assist therein:

24           1. **Cheats**; i.e. methods, not expressly authorized by
               Blizzard, influencing and/or facilitating the gameplay,
25             including exploits of any in-game bugs, and thereby
               granting you and/or any other user an advantage over
26             other players not using such methods;
               2. **Bots**; i.e. any code and/or software, not expressly
27             authorized by Blizzard, that allows the automated control
               of a Game, Battle.net and/or any component or feature

28

Mitchell
Silberberg &
Knupp LLP

7082442.13

8

**COMPLAINT**

thereof, e.g. the automated control of a character in a Game;

3. **Hacks**; i.e. accessing or modifying the software of a Game or Battle.net in a manner, not expressly authorized by Blizzard; and/or

4. any code and/or software, not expressly authorized by Blizzard, that can be used in connection with the Battle.net client, Battle.net, a Game and/or any component or feature thereof which changes and/or facilitates the gameplay;"

EULA, ¶ 1.C.ii.

27.    The EULA also expressly conditions access to the Blizzard Games on the users' promise to not "[c]opy or reproduce (except as provided in Section 1(B)), translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on or related to the Battle.net Client or Games." EULA, ¶ 1.C.i.

28.    The Blizzard Games are made available to the public exclusively through Blizzard's proprietary Battle.net system.  (This includes any physical copies of the Blizzard Games, which must be activated and played through the Battle.net system).  Thus, it is not possible for a user to lawfully obtain access to any of the Blizzard Games without expressly consenting to the EULA.

### Defendants' Unlawful Activities

29.    Enright is an individual engaged in the for-profit business of software coding and development.  Among the software products developed and maintained by Enright are "HonorBuddy," "DemonBuddy" and "StormBuddy" (the "Bots").  The Bots are software programs that, when installed on a user's computer, permit the user to "automate" his or her play of the Blizzard Games.  Using the Bots, players are able to manipulate the game environment for their own benefit and unfairly and artificially increase their standing and rank within the Blizzard Games.  This practice is extremely damaging to the value and integrity of the Blizzard Games, including because it frustrates and alienates legitimate purchasers

Mitchell
Silberberg &
Knupp LLP

7082442.13

9

**COMPLAINT**

1   and users of the Blizzard Games, thereby undermining Blizzard's painstaking

2   efforts to retain user interest.

3      30. Enright, using the alias "Apoc," identifies himself online as the "Core

4   Developer" of the Bots.  Blizzard is informed and believes, and on that basis

5   alleges, that Enright, either alone or with the assistance or support of the other

6   Defendants, has developed and distributed (and continues to develop and

7   distribute) extensive software code for the Bots.  Among the code that Enright has

8   developed and distributed is code that enables the Bots to function, that ensures

9   that the Bots work with each new "patch" or iteration of the Blizzard Games, and

10  ensures that the Bots cannot be detected or disabled by Blizzard.  Enright regularly

11  communicates with members of the public concerning his efforts to program and

12  improve the Bots, provides technical support for the Bots, and instructs and advises

13  others as to how to develop or author software code for the Bots (including by

14  posting portions of his code for others to review and adapt).

15     31. Blizzard is informed and believes, and on that basis alleges, that in

16  order to create, improve, and maintain the Bots, Enright engaged and continues to

17  engage in a series of unlawful acts.  Enright improperly or fraudulently obtained

18  access to Blizzard's software clients for each of the Blizzard Games by assenting

19  to the EULA, knowing and intending to violate several of its conditions.  Enright's

20  assent to the EULA was fraudulent and deceptive, for the sole purpose of

21  improperly gaining access to the software clients for the express purpose of

22  engaging in unauthorized copying, reverse engineering, disassembling,

23  decompiling, and/or creating derivative works of the Blizzard Games.  Enright then

24  copied the Blizzard Games to his personal computer in violation of the EULA and

25  outside the scope of the limited license set forth therein.

26     32. Blizzard is informed and believes, and on that basis alleges, that once

27  in possession of Blizzard's copyrighted software code for the Blizzard Games,

28

Mitchell
Silberberg &
Knupp LLP

7082442.13

10

**COMPLAINT**

Enright engaged in multiple acts of unauthorized reproduction, adaptation, and/or distribution of Blizzard's copyrighted works. By way of example, and without limitation, Enright downloaded and copied to hard drives or other storage devices multiple copies of the Blizzard Game software clients. Enright disassembled and/or decompiled copies of the Blizzard Game software clients in order to gain access to and/or copy Blizzard's copyrighted source code. Enright also copied, distributed or disseminated portions of Blizzard's source code and/or data generated by such source code to individuals located around the world. Such unauthorized acts of reproduction, distribution, and adaptation were made solely for the purpose of developing or maintaining the Bots, which have no purpose other than to allow their users to cheat in the Blizzard Games and whose use is strictly prohibited by the EULA. Blizzard has never authorized Enright or any of the Defendants to engage in any of the foregoing acts; to the contrary, such conduct is expressly prohibited by Blizzard in its EULA.

33. Enright actively participates in the creation, maintenance, promotion, and distribution of the Bots, including on and through the websites located at https://www.thebuddyforum.com, http://www.stormbuddy.tv, https://www.demonbuddy.com, and http://www.honorbuddy.com (collectively, the "Buddy Websites"). For example, Enright regularly communicates with purchasers and users of the Bots via "message boards" or "forums" contained on Buddy Websites. Using these message boards, Enright offers technical support and advice to potential or actual purchasers, including advice on how to avoid being caught by Blizzard, how to download and install the Bots, and how to more effectively use the Bots to cheat in the Blizzard Games. Enright regularly solicits and receives feedback from users of the Bots, which he incorporates in order to prevent Blizzard from detecting and preventing use of the Bots.

34.     Enright is well aware that his conduct is unlawful and in violation of the EULA, and that his conduct is causing ongoing harm to Blizzard.  Blizzard's efforts to combat bots have been widely reported in the media.  In fact, among the matters that have been widely discussed among the Blizzard community, including on message boards dedicated to the Bots, are court decisions holding the makers of bot software liable for violation of the Digital Millennium Copyright Act, intentional interference with contract, and breach of contract.  Enright also specifically has discussed the fact that Blizzard prohibits the use of bots and has expended significant resources to detect and remove them from its games.  As Enright noted in one recent online post: "[O]ur priority is finding the rest of the detections Blizz added, and working around them . . . ."

## COUNT I
### Copyright Infringement

35.     Blizzard realleges and incorporates by reference the allegations in paragraphs 1 through 34, as if set forth fully herein.

36.     Blizzard is the owner of valid and registered copyrights in each of the Blizzard Games, including in the literal source code underlying the Games and in the audiovisual work comprised within each Blizzard Game.

37.     Defendants have infringed, and are continuing to infringe, Blizzard's copyrights by reproducing, adapting, distributing, and/or authorizing others to reproduce, adapt, and distribute copyrighted elements of the Blizzard Games without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

38.     Blizzard has never authorized or given consent to Defendants to use its copyrighted works in the manner complained of herein.

39.     Defendants' acts of infringement are willful, in disregard of, and with indifference to the rights of Blizzard.

40.     As a direct and proximate result of the infringements alleged herein, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

41.     Blizzard is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

42.     As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believe, and on that basis alleges, that, unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's rights in the Blizzard Games.  Blizzard is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT II

### Intentional Interference with Contractual Relations

43.     Blizzard realleges each and every allegation set forth in Paragraphs 1 through 42, inclusive, and incorporates them by reference herein.

44.     As described herein, before installing the client software and playing the Blizzard Games, licensed users first must assent to the EULA, thereby creating contracts between the users and Blizzard.  Among other provisions, the EULA provides that the user may not "[c]reate, use, offer, advertise, make available and/or distribute . . . **Bots**; i.e. any code and/or software, not expressly authorized by Blizzard, that allows the automated control of a Game, Battle.net and/or any component or feature thereof, e.g. the automated control of a character in a Game . . . ."

45.     Blizzard's contracts with its users are valid and enforceable.

46.     Blizzard is informed and believes, and on that basis alleges, that Defendants are aware of the contracts between Blizzard and its users, and additionally are aware of the Blizzard EULA by virtue of their own Blizzard Game accounts.  Defendants specifically are aware that the EULA prohibits players from using bots.  Nevertheless, Defendants intentionally encourage and induce users of the Blizzard Games to purchase and use the Bots, knowing that the use of these products by their customers is a breach of these customers' contracts with Blizzard.

47.     By inducing licensed users to breach their contracts with Blizzard, Defendants have intentionally interfered, and continue to interfere, with the contracts between Blizzard and its users.

48.     As a result of Defendants' actions, Blizzard has suffered damage in an amount to be proven at trial, including but not limited to loss of goodwill among users of the Blizzard Games, diversion of Blizzard resources to attempt to detect and prevent the use of Defendants' Bots, decreased profits, and loss of profits from users whose accounts Blizzard has terminated for violation of the EULA.

49.     As a further result of Defendants' actions, Defendants have unjustly obtained specifically identifiable property, consisting of all of the proceeds attributable to the sale of the Bots, and any other products or services that violate any of Blizzard's rights, and any additional property traceable to those proceeds. Those proceeds, which are directly attributable to Defendants' manipulation and misuse of the Blizzard Games and intentional interference with Blizzard's contracts, rightfully and equitably belong to Blizzard.

50.     Defendants' intentional interference with the contracts between Blizzard and its licensed users entitles Blizzard to injunctive relief and compensatory damages, the imposition of a constructive trust over Defendants' wrongfully obtained proceeds, and other available relief.

Mitchell
Silberberg &
Knupp LLP

7082442.13

14

**COMPLAINT**

51.     Defendants are guilty of oppression, fraud, or malice, and Blizzard, in addition to its actual damages, by reason thereof, is entitled to recover exemplary and punitive damages against Defendants.

## COUNT III

### Breach of Contract

52.     Blizzard realleges each and every allegation set forth in Paragraphs 1 through 51 inclusive, and incorporates them by reference herein.

53.     Defendants have assented to the EULA.  The EULA restricts the contracting party from "[c]reat[ing], use[ing] offer[ing], advertis[ing], mak[ing] available and/or distribut[ing] . . . **Bots** . . . ."  Additionally, the EULA provides that the user may not "[c]opy or reproduce [], translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on or related to the Battle.net Client or Games."

54.     Defendants have breached the EULA, in violation of the laws of the State of California, by, among other things, creating, distributing, selling, and promoting the Bots, as well as by exploiting and reverse engineering Blizzard's proprietary software in order to create and maintain the Bots.

55.     As a result of Defendants' actions, Blizzard has suffered damage in an amount to be proven at trial, including but not limited to loss of goodwill among users of the Blizzard Games, diversion of Blizzard resources to attempt to detect and prevent Defendants' Bots, decreased profits, and loss of profits from terminated users.

56.     Defendants have breached and continue to breach the EULA, by reason of which Blizzard has suffered and, unless Defendants are enjoined, will continue to, suffer harm and irreparable injury.  Blizzard is entitled to specific

1   performance of the EULA, and/or temporary, preliminary and permanent

2   injunctions prohibiting further acts of breach.

3

4                          **PRAYER FOR RELIEF**

5          WHEREFORE, Blizzard prays that this Court enter judgment in its favor on

6   each and every claim for relief set forth above and award it relief, including but not

7   limited to an Order:

8          1.     Preliminarily and permanently enjoining Defendants, their officers,

9   employees, agents, subsidiaries, representatives, distributors, dealers, members,

10  affiliates, and all persons acting in concert or participation with Defendants from:

11  (i) infringing Blizzard's copyrighted works; (ii) inducing or contributing to third

12  party infringements of Blizzard's copyrighted works; (iii) intentionally interfering

13  with Blizzard's contracts with players; and (iv) violating the EULA.

14         2.     Requiring Defendants to shut down the Bots and any colorable copy

15  thereof, hosted at any domain, address, location, or ISP within the jurisdiction of

16  this Court.

17         3.     Requiring Defendants to deliver to Blizzard all copies of materials

18  that infringe or violate any of Blizzard's rights described herein.

19         4.     Requiring Defendants to provide Blizzard with an accounting of any

20  and all sales of products or services that infringe or violate any of Blizzard's rights

21  described herein.

22         5.     Awarding Blizzard monetary relief including damages sustained by

23  Blizzard in an amount not yet determined, including actual or statutory damages

24  for copyright infringement and willful infringement under 17 U.S.C. §§ 504, as

25  appropriate.

26         6.     Awarding Blizzard its costs and attorneys' fees in this action pursuant

27  to 17 U.S.C. §§ 505 and other applicable laws.

28

Mitchell
Silberberg &
Knupp LLP

7082442.13

**COMPLAINT**

1      7.    Awarding such other and further relief as this Court may deem just

2 and appropriate.

3

4 Dated: November 9, 2015         KARIN G. PAGNANELLI
                                MARC E. MAYER

5                                   DANIEL A. KOHLER
                                MITCHELL SILBERBERG & KNUPP LLP

6

7

8                               By: /s/Marc E. Mayer
                                   Marc E. Mayer

9                                    Attorneys for Plaintiff
                                   Blizzard Entertainment, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **JURY DEMAND**

Plaintiff Blizzard Entertainment, Inc. hereby demands a trial by jury on all matters and issues so triable.

Dated: November 9, 2015

KARIN G. PAGNANELLI
MARC E. MAYER
DANIEL A. KOHLER
MITCHELL SILBERBERG & KNUPP LLP

By: /s/Marc E. Mayer
Marc E. Mayer
Attorneys for Plaintiff
Blizzard Entertainment, Inc.

Mitchell
Silberberg &
Knupp LLP

7082442.13

18

**COMPLAINT**